v.

STATE of Indiana, Appellee–Petitioner.

No. 49A04–0506–JV–354.

Court of Appeals of Indiana.

May 18, 2006.

Transfer Denied July 6, 2006.

Patricia Caress McMath, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

S.D. appeals her adjudication as a delinquent child for committing acts that would be intimidation as a class D felony if committed by an adult.

We affirm.

### ISSUE

Whether sufficient evidence supports the adjudication.

### FACTS

On March 22, 2005, S.D., a fourteen-year-old student at North Central High School, was told by her algebra teacher to return class papers that did not belong to her. Her teacher, Andy Noble ("Noble"), did not accuse of her of cheating; however, S.D. responded with a series of adamant denials of cheating. S.D.'s concern was plain: if this incident were to be deemed cheating by Noble, this would constitute her second cheating infraction and would result in her expulsion from the class and a failing grade. Noble took no official action at this point, but requested that S.D. complete her assignment in Cheryl Jackline's ("Jackline") room. Jackline was S.D.'s resource teacher.

Upon arrival at Jackline's room, S.D. continued her adamant denial that she had not been cheating. S.D. then threatened to kill Noble if he accused her of cheating. Her threats also included how she would "mess up" the school and use "grenades" to blow up the school. (Tr. 18). S.D. further stated to Jackline, in front of six other students, that she did not care who heard her and "didn't care if [Jackline] told [Noble]." Id. Jackline reported S.D.'s statements to the school administration.

The next day, a school assistant principle questioned S.D. concerning her statements. S.D. admitted that, in front of her class, she had threatened to kill Noble. That same day, Noble was also informed of S.D.'s threats to harm him and others at the school. Because he frequently taught S.D., Noble became nervous and uncomfortable.

On March 24, 2005, the State filed a petition alleging that S.D. committed a delinquent offense. *See* Ind.Code § 31–37–1–2. Specifically, S.D. was alleged to have committed intimidation in violation of Indiana Code section 35–45–2–1. The allegation read:

> On or about the 22nd day of March, 2005, (S.D.) did communicate a threat, of a forcible felony, that is: to kill Mr. Noble, to another person, that is: Mr. Noble, a school employee, with the intent that said Mr. Noble, engage in conduct against his will, that is: not discipline (S.D.).

The trial court made a true finding and found that S.D. had committed intimidation as a class D felony if committed by an adult.

### DECISION

■ S.D. asserts that the evidence presented by the State failed to prove beyond a reasonable doubt that S.D. committed intimidation as a class D felony if committed by an adult. Specifically, she argues that there was insufficient evidence to show that her threat to kill Noble and harm the school was "communicated" within the meaning of Indiana Code section 35–45–2–1. We disagree.

■ Our standard of review for sufficiency of the evidence in a juvenile case has been described as follows:

> [W]hen the State seeks to have a juvenile adjudicated to be [a] delinquent child, the State must prove every element of that offense beyond a reasonable doubt. Upon review, we will not reweigh the evidence or judge the credibility of the witnesses. Rather, this court looks to the evidence and the reasonable inferences therefrom that support the [true finding], and we will affirm a conviction if evidence of probative value exists from which the factfinder could find the defendant guilty beyond a reasonable doubt. Thus, we will affirm the finding of delinquency unless it may be concluded that no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt.

*C.T.S. v. State*, 781 N.E.2d 1193, 1200–01 (Ind.Ct.App.2003), *trans. denied* (quoting *J.V. v. State*, 766 N.E.2d 412, 415 (Ind.Ct.App.2002), *trans. denied*). Further, it is for the trier of fact to resolve conflicts in testimony and to determine the weight of the evidence and the credibility of the witnesses. *C.T.S.*, 781 N.E.2d at 1201. As S.D. has chosen to only argue the sufficiency of the evidence presented regarding whether she "communicated" her threat, we will only address this discrete issue and deem others waived. *See Johnson v. State*, 845 N.E.2d 147, 2006 WL 871198 at *5 (Ind.Ct.App.2006).

Intimidation is defined as occurring when a person "communicates a threat[1] to another person, with the intent that the other person engage in conduct against the other person's will." Ind.Code. § 35–45–2–1(a). The offense "is a Class D felony if ... the person to whom the threat is

---

1. A "threat" means "an expression, by word or action, of an intention to ... unlawfully injure the person threatened or another person, or damage property ... (or) commit a crime ...." Ind.Code § 35–45–2–1(c).

communicated; . . . is an employee of a school corporation . . . ." Ind.Code. § 35–45–2–1(b).

S.D. relies heavily upon *J.T. v. State*, 718 N.E.2d 1119 (Ind.Ct.App.1999), to support her contention that since her communication was not stated to the target of the threat, Noble, her threat was not "communicated" within the meaning of the statute. We find this argument unpersuasive. In *J.T.*, a juvenile was adjudicated a delinquent child for typing and printing a threatening and graphic note inspired by a book on witchcraft. *Id.* at 1121. She printed the document and intended for a friend to retrieve it. *Id.* However, a librarian who accidentally obtained the document from the printer later presented it to the target of the threat. *Id.* In holding that there was insufficient evidence to conclude that the threat was communicated, the court stated, "J.T. did not know or have good reason to believe that the document would be intercepted and transmitted through various intermediaries . . . ." *Id.* at 1124. The court's holding was sound. J.T. had typed a document that was not shown to be intended for distribution or to be discovered by any member of the school faculty or administration. *Id.*

In the instant case, however, this court is faced with a markedly different scenario. Instead of a threat made privately and not intended to reach the ears of the target of the threat, S.D.'s threat was made in a classroom of students and in front of another school employee. Further, the evidence established that S.D. informed Jackline that she did not care if Jackline told Noble about the threat she made. These facts sufficiently distinguish this case from *J.T.* so as to render S.D.'s reliance misplaced.

Instead, this court finds *Ajabu v. State*, 677 N.E.2d 1035 (Ind.Ct.App.1997), *trans. denied*, controlling. In *Ajabu*, the father of a man facing the death penalty made statements following a hearing in the Hamilton County Superior Court threatening to kill the attorney prosecuting his son's case. *Id.* at 1037. Ajabu argued that when he spoke to radio, print, and television media, he was not communicating his threat to the other person within the meaning of Indiana Code section 35–45–2–1(a). *Id.* at 1041. However, the court determined that " 'communicate' encompasses those threats made known or transmitted to another person, and (section 35–45–2–1) does not limit the means utilized to convey the threat." *Id.* at 1042. The court went on to note:

> Ajabu's statements were not idle or private comments but messages which he repeatedly and emphatically sought to convey through the news media. In his first statement Ajabu said, "I want to serve notice," and in a subsequent television interview he declared, "I am putting the world on notice."

*Id.* at 1043. The *Ajabu* court drew an appropriate distinction between those public threats in which the individual making the threat "knew or had good reason to believe" the threat would reach the intended party, and those idle comments that are intended to remain private.[2] *Id.*

In this case, S.D. stated to Jackline that she was going to kill another member of the school faculty, use hand grenades, and harm the school. While these statements were not made directly to Noble, there is no reason to believe that Jackline would not report this information either to her fellow teacher or to individuals who would

---

**2.** Any claim by S.D. that her threat to kill Noble was an idle or private comment would require this court to not only reweigh the evidence, but to discount substantive portions of the record entirely. This we will not do. *See C.T.S.*, 781 N.E.2d at 1201.

make it known to Noble. Furthermore, S.D. also stated to the entire classroom regarding her threat to kill Noble, "I don't care who hears it." (Tr. 18). This public threat, made by S.D., is of the same nature and tenor as those of Ajabu, to "serve notice" upon the target of the threat. *Ajabu*, 677 N.E.2d at 1043. It was reasonably probable that S.D.'s threat would be brought to Noble's attention. Accordingly, we hold S.D.'s threat was communicated within the meaning of Indiana Code section 35–45–2–1, and there was sufficient evidence to adjudicate S.D. a delinquent for intimidation as a class D felony if it were committed by an adult.

Affirmed.

KIRSCH, C.J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The statute involved, I.C. § 35–45–2–1, requires the threat to be communicated to the person who is being retaliated against for a prior lawful act. It does not make it a violation of the statute if the intended victim *receives* the threat indirectly through another source.

The statute in its present form requires that the actor, i.e. the defendant, communicate the threat *to the other person.* If the General Assembly had wished to broaden the scope of the prohibited conduct it could have done so.

It is not enough that S.D. did not care who heard her threat or that she did not care whether Jackline communicated the threat to Noble. The fact remains that S.D. did not communicate a threat to Noble.

I would reverse the delinquency determination.