**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL RILEY**
Rensselaer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON E. KLEIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1201-CR-38 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Les E. Meade, Judge
Cause No. 79D05-1104-FD-165

**February 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Brandon E. Klein appeals his convictions and the sentences imposed for intimidation, as a Class D felony, and invasion of privacy, as a Class A misdemeanor, following a jury trial. Klein presents the following issues for review:

1. Whether the trial court erred when it denied Klein's motion for change of venue.

2. Whether the evidence is sufficient to support his convictions for intimidation, as a Class D felony, and invasion of privacy, as a Class A misdemeanor.

3. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Katie Jacobs obtained an ex parte protective order against Klein on September 21, 2010 ("Protective Order"). The Protective Order was personally served on Klein on October 19, 2010, and it required him to stay away from Jacobs, her residence and her school, which was defined as Purdue University, West Lafayette, Indiana. Klein was familiar with Purdue because it had "served as the educational and inspirational backbone for the Klein family for three generations." Appellant's App. at 17. He had also visited his brother many times on that campus, but Klein had graduated from Purdue's Indianapolis campus.

Klein opposed the Protective Order. In the course of the proceedings, he spoke with Dawn Gross, the chief investigator for Tippecanoe County Prosecutor's Office, both in person and on the phone. Klein spoke with Gross "at length" and confided to her

2

about his relationship with Jacobs. Transcript at 190. Gross also spoke with Klein's mother and with Jacobs and her family.

Klein filed several motions for discovery in the Protective Order proceeding. The trial court set those motions for hearing on April 14, 2011. On April 13, Klein checked into the Union Club Hotel at the Purdue Student Union, which is on Purdue's West Lafayette campus. He left the hotel in his car for dinner and then returned afterward. At one point he asked the desk clerk whether there might be a computer available for use. She directed him to one of the campus student libraries.

At the hearing the following day, the trial court denied Klein's discovery requests. Gross passed Klein in the hallway after the hearing and greeted him, but Klein appeared upset. He said that the "justice system is all F'd up." Id. at 99. A short time later, Klein appeared in the reception area outside Gross' office and asked to speak with her. Klein was angry and crying. Gross attempted to calm Klein in her office, but he remained agitated and said repeatedly that he wanted to go to jail. Klein then said that he had violated the protected order. When Gross asked if he had seen Jacobs, Klein answered negatively but said that he had stayed overnight in the Union Club Hotel and that he knew that that was a violation of the Protective Order. At that point in time, Gross was unaware that the Protective Order included the West Lafayette Purdue campus.

Gross asked Klein to leave Jacobs alone. Klein answered that he had "researched" her and knew where she lived and "all about her[.]" Id. at 102. Klein continued to repeat that he wanted to go to jail, and Gross again told him to leave Jacobs alone. Klein then said, "I'm going to hurt her[. I]s that enough?" Id. at 103. Gross then tried to call

Klein's mother, hoping that she could calm him. Klein became upset and stormed out of the office. Gross summoned bailiffs to find Klein and detain him because she was afraid he was going to hurt Jacobs. Klein was found and detained a short time later in the courthouse. His mood moved rapidly between laughing and yelling and being very upset and angry. He asked Gross if she had the threat on tape.

The State charged Klein with intimidation, as a Class D felony, and invasion of privacy, as a Class A misdemeanor. The State later filed a motion to amend the information, which the trial court granted. As a result, the State charged Klein with invasion of privacy, as a Class A misdemeanor; intimidation, as a Class A misdemeanor; and intimidation, as a Class D felony.

On the day before trial, Klein filed a motion for change of judge. The trial court denied that motion after a hearing. A trial was held on November 29, and the jury found Klein guilty on all counts. The trial court merged the Class A misdemeanor intimidation count into the Class D felony intimidation count and entered judgment of conviction on invasion of privacy, as a Class A misdemeanor, and intimidation, as a Class D felony. On December 28, the court identified Klein's young age and minimal criminal history as mitigators. The court refused to accept as a mitigator Klein's argument that he was emotionally upset at the time of the offenses. The court then identified as aggravators Klein's lack of remorse, repeated disdain for authority, and "unwillingness to simply accept facts." Id. at 312. The court found that the aggravators outweighed the mitigators and sentenced Klein to consecutive terms of two years executed for intimidation, as a

4

Class A felony, and one year for invasion of privacy, as a Class A misdemeanor, suspended to probation. Klein now appeals.

## DISCUSSION AND DECISION

### Issue One: Change of Venue

A motion for change of judge is generally required to be filed within ten days after a plea of not guilty is entered. Ind. Crim. Rule 12(D)(1). If the applicant first obtains knowledge of a reason to move for a change of judge after that time, however, the applicant may file the motion "which shall be verified by the party specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence." Crim. R. 12(D)(2). "The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice." Crim. R. 12(B).

A change of judge is neither automatic nor discretionary, but rather requires the trial judge to make a legal determination, not a self-analysis, of actual bias or prejudice. Voss v. State, 856 N.E.2d 1211, 1216 (Ind. 2006) (citations omitted). Adjudicating a request for change of judge based on Rule 12(B) requires an objective, not subjective, legal determination by the judge, who is "to examine the affidavit, treat the facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice." Id. (internal quotation marks and citation omitted). The law presumes a judge is unbiased and unprejudiced. Patterson v. State, 926 N.E.2d 90, 93 (Ind. Ct. App. 2010). The appropriate standard of review of a trial judge's decision to grant or deny a motion for change of judge under Indiana Criminal Rule 12 is whether the judge's

decision was clearly erroneous. Sturgeon v. State, 719 N.E.2d 1173, 1182 (Ind. 1999). Reversal will require a showing that leaves us with a definite and firm conviction that a mistake has been made. Id.

Klein contends that the trial court erred when it denied his motion for change of judge. Specifically, Klein alleges that he proved the trial court's bias or prejudice based on the trial judge's prior statements. In his affidavit supporting the motion to change judge, Klein alleged as follows:

> That on November 22, 2011 the applicant first discovered that the current judge in the above matter, while sitting as judge in Cause Number 79D05-1009-PO-402, did make statements which cast doubt on the Defendant as a witness including:
>
> "[I] don't think the jury will believe it [Defendant's testimony]."
>
> Further, on [sic] the August 12, 2011 hearing on Cause Number 79D05-1009-PO-402, the court alleged that Mr. Klein's actions in Hamilton County were frivolous and just another way for Mr. Klein to continue to abuse and harass Ms. Jacobs.

Appellant's App. at 15 (alterations in original). We address each statement in turn.

At the time of the ruling, Klein was or had been a party in three separate cases involving Jacobs: the Protective Order matter filed by Jacobs, a civil suit filed by Klein against Jacobs and her family in Hamilton County, and the underlying criminal matter. At a pre-trial conference in the Protective Order case, the trial court stated that it did not believe the jury would believe Klein as the reason "why the ruling was being made" at that conference and why the protective order would remain in effect. Transcript at 14. And with regard to the second statement, the trial court's statement about the Hamilton County civil case was merely a restatement of what that trial court had said about that

6

civil case. In other words, the trial court was "trying to understand what happened in the Hamilton County case." Id.

We conclude that the statements on which Klein based his motion to change judge do not support a rational inference of bias or prejudice. The trial court explained the bases for the statements, and neither implicated the court's objectivity with regard to Klein. Therefore, Klein has not met his burden to show that the trial court's denial of the motion to change judge is clearly erroneous.

## Issue Two: Sufficiency of Evidence

When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. Klein contends that the evidence is insufficient to support his convictions for intimidation, as a Class D felony, and invasion of privacy, as a Class A misdemeanor. We address each conviction in turn.

### Intimidation

To prove the offense of intimidation, as a Class D felony, the State was required to show beyond a reasonable doubt that Klein communicated a threat to another person, namely Jacobs, with the intent to place her in fear of retaliation for a prior lawful act, obtaining a protective order against him, and that the threat was to commit a forcible

felony. See Ind. Code § 35-45-2-1(a), (b)(1)(A). Whether intimidation has occurred is a question of fact. Ajabu v. State, 677 N.E.2d 1035, 1041 (Ind. Ct. App. 1997) (citation omitted), trans. denied. Whether a communication is a threat is an objective question for the trier of fact. Id. at 1041-42. "Communicate" as used in the intimidation statute "encompasses those threats made known or transmitted to another person, and the statute does not limit the means utilized to convey the threat." Id. at 1042. Such threats include those a person makes known to the victim through the print, radio, or television media with the requisite intent. Id.

Klein argues that the State did not prove that he communicated the threat to the subject of the threat.[1] This court's decision in Ajabu is instructive regarding the element of communication. In that case, Ajabu, the father of a murder defendant, told media in several interviews that if his son were to suffer the death penalty in the case, then other people, namely the prosecutor and the mother of two murder victims, would also die. Ajabu was subsequently charged with and convicted of two counts of intimidation. On appeal, Ajabu argued that the intimidation statute required the threat to be communicated directly to the victims. While we based our affirmance of the conviction in part on the fact that the threat was communicated to the general public, including the purported victims, through the media, we also noted that the "intimidation statute applies whether the threat is made to unlawfully injure the person threatened or another person." Id. (citing Ind. Code § 35-45-2-1(c)(1)).

---

[1] Klein also contends that the State did not prove that he intended to place Jacobs in fear or that the threat was "intended to get revenge because Jacobs[] had filed a protective order." Appellant's Brief at 13. But Klein does not support these contentions with cogent reasoning. Therefore, they are waived. See Ind. Appellate Rule 46(A)(8)(a).

8

Still, Klein asserts that the threat must be communicated in some fashion to the intended victim, and in support he cites Bolen v. State, 430 N.E.2d 398 (Ind. Ct. App. 1982). There, the defendant spoke disparagingly to a police officer about the intended victim, said that he "intended to get" the intended victim, and then showed the officer a clip from an automatic weapon and said, "I'm going to kill him." Id. at 401. Klein misinterprets Bolen, which was a case about the admissibility of the officer's testimony. The court stated in dictum that "the statements may not have necessarily constituted a crime inasmuch as [the intended victim] was not present at the time[.]" Id. But the case does not stand for the proposition that a threat must be communicated directly to or in the presence of the intended victim.

In any event, we have subsequently interpreted the intimidation statute to the contrary. In S.D. v. State, 847 N.E.2d 255 (Ind. Ct. App. 2006), trans. denied, a student told a teacher that she was going to kill another named teacher, that she planned to use hand grenades, and that she would harm the school. We held that those threats, although not communicated directly to or in the presence of the intended victim, were intended to "serve notice" on the target of the threat. Id. at 259 (citation omitted). "It was reasonably probable that S.D.'s threat would be brought to [the other teacher's] attention. Accordingly, we hold S.D.'s threat was communicated within the meaning of Indiana Code section 35-45-2-1." Id.

In the present case, there was sufficient evidence from which the trial court could determine that Klein's statements to Gross were threats communicated within the meaning of the intimidation statute. While in an agitated state, Klein repeatedly told

9

Gross that he wanted to go to jail. When Gross reminded Klein to leave Jacobs alone, he said, "I'm going to hurt her is that enough?" Transcript at 103. Klein knew that Gross had previously met and talked with Jacobs and that she knew that Jacobs had a Protective Order against him. As in S.D., Klein knew or had reason to know that the threat to "hurt" Jacobs would be brought to Jacobs' attention.

We hold that the threat in this case was "communicated" within the meaning of Indiana Code Section 35-45-2-1. See S.D., 847 N.E.2d at 259. Klein's contention that he did not communicate a threat but merely had an "emotional outburst" is a request that we reweigh the evidence, which we cannot do. See Jones, 783 N.E.2d at 1139. The evidence is sufficient to support Klein's conviction for intimidation, as a Class D felony.

### Invasion of Privacy

Klein next contends that the evidence is insufficient to support his conviction for invasion of privacy, as a Class A misdemeanor. "A person who knowingly or intentionally violates . . . an ex parte protective order issued under IC 34-26-5 . . . commits invasion of privacy, a Class A misdemeanor." Ind. Code § 35-46-1-15.1. Klein contends that the State failed to prove that he knowingly or intentionally violated the protective order. We cannot agree.

Klein asserts that he "did not realize that he was not supposed to be on the Purdue Campus[.]" Appellant's Brief at 20. But the Protective Order clearly prohibited Klein from being on the Purdue University West Lafayette campus. And the Protective Order had been personally served on him. Klein cannot disclaim knowledge of the terms of the order.

Klein also asserts that he "did not know that the Union Club Hotel was part of the Purdue University Campus." Appellant's Brief at 20. Gross testified that Klein appeared outside her office in distress, and she invited him in. When they talked, he said that he wanted to go to jail and that he had violated the protective order, but he denied having seen Jacobs. The evidence also shows that Klein had visited his brother on the West Lafayette campus and was familiar with it. Moreover, the Union Club Hotel is attached to and part of the Student Union Building on the campus. And when a hotel clerk directed Klein to a student library on campus for working printers, he walked in the other direction. Further, the hearing for which Klein was in town was to be held in Lafayette, not West Lafayette, and there are other hotels in the area that are not on the campus. This evidence and the reasonable inferences from the evidence support the conclusion that Klein was aware that the Union Club Hotel was on the Purdue University West Lafayette campus.

Klein's arguments regarding the terms of the Protective Order and the definition of the West Lafayette campus amount to a request that we reweigh the evidence. Again, we will not do so. See Jones, 783 N.E.2d at 1139. The evidence shows that Klein knowingly or intentionally violated the terms of the Protective Order. Thus, the evidence is sufficient to support his conviction for invasion of privacy, as a Class A misdemeanor.

**Issue Three: Appellate Rules 7(B)**

Finally, Klein contends that his sentences are inappropriate in light of the nature of the offenses and his character. Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana

Constitution "authorize [] independent appellate review and revision of a sentence imposed by the trial court." Roush, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offense and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

Klein does not articulate his Rule 7(B) argument in terms of the nature of the offenses, but we note that the offenses are clear-cut. Klein had a working knowledge of

the Purdue University West Lafayette campus and was to appear in court in Lafayette in the Protective Order case. Despite the terms of the Protective Order, he spent the night on the Purdue West Lafayette campus in the Union Club Hotel. And when the hearing the following day resulted in adverse determinations, he became agitated, told Gross that he wanted to go to jail, confessed that he had violated the terms of the Protective Order, and threatened to harm Jacobs if that would accomplish his goal of going to jail. In addition, the trial court imposed less than the three-year maximum on the Class D felony. On these facts, we cannot say that his aggregate sentence of less than the maximum allowable, with two years executed and one year suspended to probation, is inappropriate in light of his convictions for intimidation, as a Class D felony, and invasion of privacy, as a Class A misdemeanor.

We next consider whether the sentence is inappropriate in light of Klein's character. In this regard, Klein first takes issue with the trial court's findings regarding aggravating and mitigating circumstances. In particular, Klein asserts that the trial court erred when it found that he was not remorseful for his actions. But Klein has not shown by citation to the record or cogent authority exactly how he believes the trial court abused its discretion in coming to that determination. Thus, the issue is waived. See App. R. 7(B). In any event, Klein merely cites to the transcript to show that determination by the trial court. Klein has not shown an abuse of discretion with regard to the finding regarding his lack of remorse.

Klein also points out that the risk and needs were assessed under the Indiana Risk Assessment System Community Supervision Tool and that he "was found to be in the

13

low risk category, indicating that he should be subject to minimum supervision and non-reporting supervision." Appellant's Brief at 23. He also asserts that "no violations of the protective order were alleged, and [he] has had no contact with the alleged victim[.]" Id. at 24. But Klein ignores the instant offenses, which involve two violations of the Protective Order, even though they did not involve contact with Jacobs. We also consider the findings by the trial court regarding Klein's character, namely: his lack of remorse, repeated disdain for authority, and "unwillingness to simply accept facts." Transcript at 312. A review of the record supports those findings. Although Klein has a minimal criminal history and is relatively young, we cannot say that the aggregate sentence is inappropriate in light of Klein's character. In sum, Klein has not shown that his sentences are inappropriate in light of the nature of the offenses or his character.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.