v.

**STATE of Indiana, Appellee–Petitioner.**

No. 27A02–9811–JV–924.

Court of Appeals of Indiana.

Oct. 20, 1999.

David M. Payne, Marion, Indiana, Attorney for Appellant.

Jeffrey·A. Modisett, Attorney General of Indiana, Teresa Dashiell Giller, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

J.T., a juvenile, authored a document which described violent acts to be inflicted upon another student. The document was sent to a printer where it was intercepted by school personnel and eventually delivered to the student named in the document. The juvenile court adjudicated J.T. a delinquent child for committing acts which would constitute Intimidation, a Class A misdemeanor, and Harassment, a Class B misdemeanor, if committed by an adult. In this appeal, we address one dispositive issue: whether the State presented sufficient evidence that J.T. communicated to or with the other student.

We reverse.

### FACTS

On May 12, 1998, fifteen-year-old J.T., a student at Mississinewa High School, and sixteen-year-old Frank, a fellow student, found a book on witchcraft in the school library. J.T. typed a witches' calendar from the book and sent the document ("Exhibit 1") to the only printer used for word processing, which was located in an area of the library restricted to staff. The librarian gave the document to J.T. without comment.

During the same school period, Frank typed a second document ("Exhibit 2") from J.T.'s written note and her verbal dictation. In its entirety, Exhibit 2 reads:

"EMEN HETAN,
EMEN HETAN, BALBERI
ASTRORATH, PATRISA
PLEASE COME AND HELP
US. EMEN HETAN, EMEN HETAN"

ALTHOUGH WE WALK
Although We Run
We'll Find a Way to Kill
Someone.

On the night of Wednesday May 13 someone shall choose to die and when they die they will never be remembered again throughout the whole world. It might just happen to the Mississinewa High School. It also might happen to somebody that we hate. She'll be killed with a small knife through her heart and her stomach will be sliced into a large cut with blood running down her chest. It might be very willing to also bring a cup to drink her blood. Doesn't that make you very thristy [sic]. The name of the villian [sic] that has been brought up in this story has to be named Andrea . . . the grouch. After she has died we'll shall [sic] have a feast on her with all the people that have been joined into the craft. For now on our occult is called Clairvoyance in the occult we shall sacrifice a[sic] animal any animal. So we can drink the blood out and so the devil can take thee sacrificed animal of the one we sacrificed. We just need to know if you would like to join us in our ritual. If you would like to help out in the black mass please ask any one of us. We would gladley [sic] appreciate it if you would keep this a secret. Thank you[.] Record at 14.

Frank went to retrieve Exhibit 2 from the printer and give it to J.T. The librari-

an, however, read the document and gave it to a teacher who, in turn, delivered it to the school office. The assistant principal read the document, questioned both J.T. and Frank about its contents and then called the police.[1] Officers questioned J.T. at the school that day in the presence of her mother, but J.T. denied she had authored the document.

The next day, the principal questioned J.T. alone. Again, she denied any knowledge of Exhibit 2, but the principal did not believe her. He told J.T. he would expel her if he later found that she had lied to him. J.T. then admitted authoring Exhibit 2. The principal called J.T.'s mother and, in her presence, J.T. repeated her confession. Thereafter, the principal summoned sixteen-year-old Andrea, the student named in the document, along with her mother, and showed the printout to them.

At some point, J.T. was suspended from school. In addition, the State filed a petition alleging J.T. to be delinquent in the following words:

> [J.T.] did communicate a threat to commit a forcible felony to [Andrea], with the intent that [Andrea] be placed in fear of retaliation for a prior lawful act, to wit: choosing not to associate with [J.T.] and/or others and/or engaging in conversation to which [J.T.] took offense.[2]
>
> [J.T.] with the intent to harass, annoy, and/or alarm [Andrea], but with no intent of legitimate communication, did communicate with a person a letter describing plans to hurt, torture, and brutalize, [Andrea].

Record at 10–11. Immediately before the court's fact-finding hearing, the State and Frank entered into a plea agreement. J.T. moved for a continuance, but the court denied her motion. Over J.T.'s objection, during the hearing the principal described J.T.'s confession. The juvenile referee found that J.T. was a delinquent child for committing acts which would be intimidation and harassment if committed by an adult. The juvenile court judge adopted those findings. J.T. now appeals.[3]

## DISCUSSION AND DECISION

### Standard of Review

 The Due Process Clause of the United States Constitution protects an accused against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This protection applies to juveniles as well as adults. *See Al–Saud v. State*, 658 N.E.2d 907, 908–09 (Ind.1995). Thus, when the State seeks to have a juvenile adjudicated to be delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. *Id.* at 908.

 On appeal, our court neither reweighs the evidence nor judges the credibility of witnesses. *Id.* at 909. We review only the evidence and reasonable inferences therefrom that support the fact finder's conclusion, and we decide whether there is substantial evidence of probative value from which a reasonable fact finder could find beyond a reasonable doubt that the defendant committed the crime. *Id.* This requires that we determine the sufficiency of the evidence on each element of the offense charged. *See Smith v. State*, 270 Ind. 479, 386 N.E.2d 1193 (1979).

### Sufficiency of the Evidence

J.T. contends that the State did not present sufficient evidence to support the

---

1. School officials had been concerned because J.T. and several other students often wore black clothing and painted their fingernails black. In addition, J.T. had worn a shirt bearing the image of Marilyn Manson, a singer who allegedly advocates violence.

2. Andrea testified that, earlier that week, she and J.T. argued, but Andrea did not consider the altercation serious. The two students had also exchanged "facial expressions."

3. We heard oral argument on September 21, 1999, at Vincennes University.

true findings that she committed acts which, if committed by an adult, would constitute intimidation and harassment.[4] Specifically, J.T. insists that there is no evidence of a communication. We consider each statute in turn.

## A. Intimidation

■ Indiana Code Section 35–45–2–1, which defines intimidation, states in relevant part:

(a) A person who communicates a threat to another person, with the intent that:

. . . .

(2) the other person be placed in fear of retaliation for a prior lawful act;

commits intimidation, a Class A misdemeanor.

. . . .

(c) "Threat" means an expression, by words or action, of an intention to:

(1) unlawfully injure the person threatened or another person, or damage property; [or]

. . . .

(3) commit a crime . . . .

J.T. argues that, even if the document contained a threat, there is no evidence that she communicated or attempted to communicate the document to Andrea.

In *Ajabu v. State*, 677 N.E.2d 1035 (Ind. Ct.App.1997), *trans. denied*, this court construed the phrase "communicates a threat to another person" in the intimidation statute. There, the defendant had made threats through the print, radio and television media. *Id.* at 1037–38. The defendant sought reversal of his convictions for intimidation and argued that the person alleged to be threatened must be present for the threat to be communicated under the statute. *Id.* at 1042. We recognized that the definition of "communicate" requires that a person make a thing known or transmit information to another, and that the text of the intimidation statute

does not limit the phrase "communicates a threat to another person" to only those threats made directly to or in the presence of the threatened party. *Id.* Thus, we decided that communication can be indirect, and we affirmed the conviction because the defendant had used means of communication that he "knew or had good reason to believe would reach" the victims. *Id.* at 1043.

J.T. typed and printed Exhibit 1 and retrieved it from the librarian without incident. J.T. then dictated and Frank typed Exhibit 2, which they sent to the same printer. When Frank attempted to retrieve that document for J.T., the librarian had intercepted it. She then gave it to a teacher, who gave it to the assistant principal, who gave it to the principal, who ultimately showed the document to Andrea, the alleged victim.

It is not enough that J.T. authored Exhibit 2, even if it contained a threat.[5] *See Gaddis v. State*, 680 N.E.2d 860, 861–62 (Ind.Ct.App.1997) (construing "threat" within statutory framework). Nor is the statute satisfied because Exhibit 2 was eventually shown to Andrea. The communication element requires that J.T. must have known or had reason to believe that the document would reach her. *See Ajabu*, 677 N.E.2d at 1043. That is not the situation here. Frank testified that he did know what J.T. wanted to do with Exhibit 2. The document itself refers to Andrea but is not addressed to her. All the evidence indicates that J.T. expected Exhibit 2 would merely be printed and returned directly to her. The printing of a single document, without more, does not constitute a communication to the person named in the document.

■ Still, the State argues that the statute encompasses threats made known

4. J.T. also claims that the juvenile court abused its discretion when it denied her motion for a continuance and that the court improperly admitted into evidence her confession to the principal. Because the first issue

is dispositive, we need not address the other issues presented.

5. Our disposition of this case obviates the need to decide whether the document contained a threat.

"to another person" and that J.T. communicated the threat to Frank and the librarian. Statutes must be read as a whole. *Harvey v. State*, 652 N.E.2d 876, 877 (Ind. Ct.App.1995), *trans. denied.* Criminal statutes must be strictly construed against the State, may not be enlarged beyond the fair meaning of the language used, and may not be held to include offenses other than those clearly defined. *Gaddis*, 680 N.E.2d at 862. Additionally, we presume that all of the words appearing in the statute were intended to have meaning. *Casey v. State*, 676 N.E.2d 1069, 1072 (Ind. Ct.App.1997).

 Under the statute, the communication of a threat "to another person" must occur with the intent that "the other person" be placed in fear for a prior lawful act.[6] IND.CODE § 35-45-2-1(a). The State does not maintain that either Frank or the librarian was placed in fear for a prior lawful act. And, as stated previously, J.T. did not know or have good reason to believe that the document would be intercepted and transmitted through various intermediaries to Andrea. We hold that, on this record, there is insufficient evidence of a communication, either direct or indirect, from J.T. to Andrea to support the finding of delinquency on the ground of intimidation.

### B. Harassment

 We next address harassment. The relevant part of Indiana Code Section 35-45-2-2, which defines the offense, provides:

> (a) A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:
>
> . . . .
>
> (2) communicates with a person by telegraph, mail, or other form of written communication;
>
> . . . .
>
> commits harassment, a Class B misdemeanor.

We discern no reason why "communicate" should be defined differently in this provision. Thus, under Indiana Code Section 35-45-2-2(a)(2), a person communicates when the person makes a thing known or transmits information to another "by telegraph, mail, or other form of written communication." Like any other writing, when the hard copy of a computer-generated document is the alleged means of communication, a person communicates that document when she knows or has good reason to believe that the document will reach the victim. *See Ajabu*, 677 N.E.2d at 1043.

 As discussed previously, however, J.T. did not know or have good reason to believe that Exhibit 2 would reach Andrea. This flaw is once again fatal to the State's case. We hold that the State did not prove that J.T. committed an act which would be harassment if committed by an adult.

### CONCLUSION

 We emphasize that both school and law enforcement authorities are responsible for school security and must respond decisively to any threat of violence. And courts should refrain from second guessing the disciplinary decisions made by school administrators. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, ——, 119 S.Ct. 1661, 1674, 143 L.Ed.2d 839 (1999). However, the same facts that would support school discipline may be insufficient as a matter of law to support a true finding based on a criminal statute. The evidence demonstrates that J.T. could not have foreseen that the document would be intercepted and eventually delivered to Andrea.

The contents of Exhibit 2 are highly offensive, but here the only question presented is whether delinquent acts were committed. We must answer that question in the negative. In doing so, we note

---

6. Nevertheless, the person placed in fear need not fear for her own safety. The statute applies whether the threat is made to unlawfully injure the person threatened or another person. IND.CODE § 35-45-2-1(c)(1); *Ajabu*, 677 N.E.2d at 1042.

that as citizens, we are entitled to think what we want and write what we want, and it is only when we communicate those thoughts or attempt to communicate those thoughts that we can be held accountable.[7] Communication is an element of both intimidation and harassment. Because the State did not establish beyond a reasonable doubt that J.T. communicated to or with Andrea, we must reverse the adjudications.

Reversed.

BAKER, J., and BAILEY, J., concur.

---

7. Article I, § 9 of the Indiana Constitution provides: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible." Because J.T. did not communicate to or with Andrea, she did not abuse her right to "speak, write, or print."