# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**JOEL M. SCHUMM**
**SHEA THOMPSON** (Certified Legal Intern)
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DONNETTA NEWELL,                )
                               )
   Appellant-Defendant,        )
                               )
       vs.                    )   No. 49A02-1309-CR-744
                               )
STATE OF INDIANA,               )
                               )
   Appellee-Plaintiff.         )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David M. Hooper, Master Commissioner
Cause No. 49F08-1306-CM-36456

**April 24, 2014**

**OPINION - FOR PUBLICATION**

**SHEPARD, Senior Judge**

Donnetta Newell appeals her conviction of intimidation, contending among other things that evidence suggesting she was engaged in an altercation involving a meat cleaver in the office at her apartment complex should have been inadmissible in her trial on a charge she subsequently threatened the manager. We affirm.

FACTS AND PROCEDURAL HISTORY

On the evening of May 28, 2013, security guard Russell Growe was on patrol at his place of employment, Harmony Park Place Apartments. Appellant Donnetta Newell, a resident of the apartments, approached Growe to complain that she was being evicted and sued for damages by the management over a recent incident. She told Growe she would not pay and declared "[s]he would take care of the m***********s and that also the new lady upstairs was about to get her f*****g head knocked off." Tr. p. 14.

Growe concluded that Newell was referring to the apartments' new manager, Evelyn Young. Newell was aware that Growe's duties included reporting security issues to the manager.

Young was not at the apartments that evening, but Growe was concerned that she would be in danger when she arrived at work. He emailed Young to tell her about Newell's statement. Growe went to Young's office first thing the next morning to discuss the matter with her, "because I did feel the threat could be carried out." *Id.* at 22. He posted additional security outside her office for several weeks.

2

Newell's statement to Growe made Young uncomfortable. This discomfort persisted over the next several days, as Newell and several associates waited outside Young's office and yelled threats at her when she got off work. *Id.* at 20.

The State charged Newell with intimidation, as a class A misdemeanor. After a bench trial, the court found her guilty and sentenced her accordingly. This appeal followed.

## ISSUES

Newell raises two issues:

I.    Whether the evidence is sufficient to sustain Newell's conviction.

II.   Whether the trial court abused its discretion by admitting evidence of prior bad acts.

## DISCUSSION AND DECISION

### I. SUFFICIENCY: WAS THIS A TRUE THREAT?

In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the judgment. *Lock v. State*, 971 N.E.2d 71 (Ind. 2012). We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. *Id.* We affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

To obtain a conviction of intimidation as a class A misdemeanor, the State must prove beyond a reasonable doubt that the defendant (1) communicated (2) a threat (3) to

3

another person (4) with the intent that the other person be placed in fear of retaliation (5) for a prior lawful act. Ind. Code § 35-45-2-1(a) (2006).

Newell says her statement to Growe about Young was not a threat, but rather some venting to a friend. Whether a statement is a threat is an objective question for the trier of fact. *Ajabu v. State*, 677 N.E.2d 1035 (Ind. Ct. App. 1997), *trans. denied.* For the purposes of the crime of intimidation, a threat is defined, in relevant part, as "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person, or damage property . . . [or] commit a crime." Ind. Code § 35-45-2-1(d).

Counsel for Newell have correctly cited *Watts v. United States*, 394 U.S. 705, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969), in which the Supreme Court was asked to determine if a defendant's statement that he would harm the president was a true threat. The Court considered the content of the statement, its context, and the reaction of the listeners. *Id.* at 708.

*Content of the Statement.* Viewed as a matter of English, Newell's declaration that she would "take care of the m***********s" and that the new manager was "about to get her f*****g head knocked off" took the form of a direct threat. While counsel has argued that Newell was probably not capable of decapitating Young, a reasonable finder of fact could conclude that such statements constituted a threat of physical harm.

*Context.* Newell made the statements at issue after she had learned that she was being evicted from her home and sued for damages. She was angry at the apartments'

4

management.  She acknowledged at trial that she was being evicted because management believed she had damaged a desk in the apartment manager's office with a meat cleaver.

*Reaction of the Listeners.*  Growe's reaction to the statement was immediate and indicated that he took it quite seriously.  He promptly notified Young, met with her as she arrived for work the next morning believing that she could be in danger, and posted security outside her office.

In addition, Newell's statement that she was going to knock Young's head off made Young feel uncomfortable.  She was further frightened in subsequent days when Newell and associates waited outside her office to threaten her as she left work.

Taken as a whole, this evidence persuades us that whether Newell was "simply venting to a friend," Appellant's Br. p. 6, or whether she made a true threat within the meaning of *Watts*, was appropriately a matter for decision by the finder of fact.

Newell further argues that there is no evidence that she intended to communicate the threat to Young as required by our statute.  The word "communicates," as used in Indiana Code section 35-45-2-1, includes threats made or known or transmitted to another person, and the statute does not limit the means utilized to convey the threat. *Ajabu*, 677 N.E.2d at 1042.

Here, Growe testified that, based on Newell's past interactions with him, she was aware his duties included reporting problems to the apartments' manager.  Furthermore, her threat against Young raised a security issue, and a reasonable person could conclude that Growe would have to act on that threat.  There is sufficient evidence for the finder of

5

fact to conclude Newell knew that her statement would be transmitted to Young. *See Walls v. State*, 993 N.E.2d 262, 268 (Ind. Ct. App. 2013) (defendant communicated a threat against a police officer by telling the officer's son, another police officer, that he would kill the father for arresting him), *trans. denied*.

## II. ADMITTING EVIDENCE OF PRIOR BAD ACTS

A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its ruling only where it is shown that the court abused its discretion. *Halliburton v. State*, 1 N.E.3d 670 (Ind. 2013). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Newell says the court should not have admitted evidence of the incident that led to her eviction, claiming it was a prior uncharged bad act with no probative value. This contention turns on Indiana Evidence Rule 404(b), which provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* This list of permissible purposes is illustrative but not exhaustive. *Ceaser v. State*, 964 N.E.2d 911 (Ind. Ct. App. 2012), *trans. denied*.

During the State's case-in-chief, the prosecutor attempted to ask its witnesses about Newell's involvement in past wrongdoing at the apartment complex. Newell objected, and the court twice sustained the objection. Tr. pp. 16, 23-24.

During Newell's case-in-chief, however, upon being asked about her eviction, Newell testified, "The day that they handed me the note by [sic] me being evicted I had asked them why was I being evicted because I was arguing with a young lady. But they felt and thought that I chopped up they [sic] desk which could nobody [sic] prove that I had no—you know, hearsay." *Id.* at 46. On cross-examination, the court permitted the State to question Newell about the desk incident because she opened the door on direct. Newell said, without admitting liability, that someone had used a meat cleaver to damage a desk ("scratch," she said) in the apartment complex's office.

We conclude that evidence about the desk incident was admissible under Rule 404(b) as probative of whether Newell intended to intimidate. Newell has argued at trial and on appeal that she never intended to threaten Young but was instead merely expressing frustration at being evicted. On this question of intent, evidence that she was believed to have done violence recently in the manager's office was legitimately available for the purpose of evaluating whether her subsequent statements about doing violence to the new manager were actually threats or just hyperbole.

Moreover, evidence of the desk incident was admissible under Rule 404(b) because it was material to evaluating Growe and Young's reaction to Newell's statement, an element of the *Watts* test. Growe's knowledge that his employer believed that Newell

7

had engaged in violent misconduct in the recent past was relevant to establish why Growe believed that Newell's threat was serious.

Of course, even if evidence of a prior bad act is admissible under Rule 404(b), the court may nonetheless decline to admit the evidence under Indiana Evidence Rule 403, which provides,

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

When evaluating the possibility of unfair prejudicial impact, courts look for the dangers that (1) the finder of fact will substantially overestimate the value of the evidence or (2) the evidence will arouse or inflame the passions or sympathies of the finder of fact. *Duvall v. State*, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012), *trans. denied*.

There is no indication in the record that the court overestimated the value of the desk incident or that it inflamed prejudice on the part of the court. To the contrary, throughout the trial the court carefully barred evidence of Newell's prior bad acts and admitted evidence of the desk incident only after she opened the door during her testimony. The court thus did not abuse its discretion in admitting evidence of the incident that led to Newell's eviction.

## CONCLUSION

We affirm the judgment of the trial court.

Affirmed.

VAIDIK, C.J., and FRIEDLANDER, J., concur.

8