ATTORNEY FOR APPELLANT

Mark K. Leeman
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana



FILED

Jan 30 2020, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of B.B., A Child Alleged to be a Delinquent,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff.* | January 30, 2020<br><br>Court of Appeals Case No. 19A-JV-1803<br><br>Appeal from the Fulton Circuit Court<br><br>The Honorable Arthur Christopher Lee, Judge<br><br>Trial Court Cause No. 25C01-1804-JD-79 |

**Tavitas, Judge.**

## Case Summary

[1]     B.B., a minor, appeals his adjudication as a delinquent for an act that would be considered intimidation if committed by an adult, a Level 6 felony. We affirm.

## Issue

B.B. raises one issue on appeal, which we restate as whether there was sufficient evidence to adjudicate B.B. as a delinquent for an act that would be considered intimidation if committed by an adult, a Level 6 felony.

## Facts

B.B. spent a significant amount of time with his friend R.A., who was a tenth grader at Rochester High School (the "high school") in 2018. The pair had been close friends for a long time, and R.A. was practically a member of B.B.'s family. In 2018, B.B. communicated with R.A.—in person, on the phone, and over Snapchat—about B.B.'s desire to shoot students at the high school. B.B. did not attend the high school; he was homeschooled.[1]

Initially, R.A. believed B.B. was joking about the shooting; however, in March 2018, R.A. began taking the statements seriously after B.B. made repeated statements about his plan to shoot students, B.B.'s tone became more serious, and B.B. had access to an assault rifle in his house. R.A. knew this assault rifle was in B.B.'s home because B.B. and R.A. previously shot the assault rifle in B.B.'s yard.[2] Additionally, one weekend, B.B. sent R.A. a picture of the assault rifle and said: "[d]on't come to school tomorrow." Tr. Vol. II p. 44. One day at B.B.'s house, B.B. showed R.A. a section of notes on B.B.'s phone that B.B.

---

[1] According to B.B.'s mother, B.B. was homeschooled because B.B. has "anxiety issues" and has "thrived much better at homeschool than he did in the large environment." Tr. Vol. II p. 29.

[2] At an earlier hearing, B.B.'s mother disputed that B.B. had access to this weapon.

described as a "manifesto," which described B.B.'s plan to shoot students at the high school. *Id.* R.A. never read the "manifesto" and never kept any of the messages B.B. sent to him over Snapchat or to R.A.'s phone.

[5] R.A. suspected the shooting would occur on April 20, 2018, which was the anniversary of the Columbine High School shooting. According to R.A., B.B. planned to get on the school bus, enter the high school, hide in a bathroom until classes began, and then begin shooting. Out of fear that B.B. may actually go through with the attack, R.A. told other students at the high school about B.B.'s threats; however, he did not notify school administrators or the police. Subsequently, the high school administrators became aware of the threats and contacted local law enforcement. Beginning April 20, 2018, the high school rerouted the school bus stops to prevent the bus from passing B.B.'s residence, limited the high school entrance to one entry point, and implemented additional security as a result of B.B.'s threats. Many students did not attend the high school for several days.

[6] Officer Matt Campbell, with the Rochester City Police Department, led the investigation into B.B.'s statements and actions. B.B. was interviewed with his mother present, and Officer Campbell obtained consent to search B.B.'s cell phone. Officer Campbell obtained assistance from Detective Travis Heishman, with the Fulton County Sheriff's Office, to extract information from the phone.

Officers located the "manifesto" that R.A. described[3] and the notes that contained ingredients required for a "flash powder," which is an explosive, along with photographs, and reference to writings attributed to the shooters in the Columbine High School attack. *Id.* at 64, 66. The references to the Columbine High School shooters were transmitted to another person via text message from B.B.'s phone; however, the recipient of the text message was never identified during the proceedings.

[7] The photos on B.B.'s phone included photographs of the assault rifle and of B.B. holding the assault rifle. The "manifesto" on B.B.'s phone included statements indicating that B.B. planned to harm others, such as: "I'm not doing this because I'm mad at anyone, it's just that suicide is overrated, if you want to die take others with you," and "[s]ometimes I wonder why I want to shoot up the school but then I remember all of the hatred and loneliness I feel everyday, knowing nobody." State's Ex. 2.

[8] On April 20, 2018, the State filed a petition alleging that B.B. was a delinquent child for committing an act that would be considered intimidation if committed by an adult, a Level 6 felony. The specific allegations in the petition for delinquency were as follows:

> Between January 2018 and April 18, 2018, [B.B.] did communicate a threat to [R.A.] with the intent of interfering with

---

[3] On B.B.'s phone, the notes were kept under the heading, "[J]ournal." Tr. Vol. II p. 71. This document also described B.B.'s depression, for which he was prescribed medication.

the occupancy of Rochester High School, to wit: by sending a threat about bringing guns to school and shooting people, which act constitutes the Level 6 Felony of Intimidation if committed by an adult, pursuant to IC 35-45-2-1(a)(3)(B)([i]) and (b)(1)(A).

Appellant's App. Vol. II p. 11.

[9] The juvenile court held a fact finding hearing on June 6, 2019. Witnesses testified to the foregoing facts. Jana Vance, superintendent of Rochester Community Schools, testified that B.B.'s threats interfered with school attendance. On June 17, 2019, the trial court entered an order adjudicating B.B. a delinquent for committing an act that would be intimidation if committed by an adult, a Level 6 felony. On July 22, 2019, the juvenile court proceeded to disposition and ordered B.B. to serve sixty days, suspended, in secure detention at Kinsey Youth Center. B.B. was placed on probation until January 12, 2020. B.B. now appeals his adjudication.

## Analysis

[10] B.B. argues the evidence was insufficient to support his adjudication as a delinquent for an act that would be considered intimidation, a Level 6 felony, because the State failed to prove that B.B. knew or had reason to know that his statements regarding the planned shootings would be communicated to any victims. When reviewing the sufficiency of the evidence in a juvenile adjudication, "we do not reweigh the evidence or judge witness credibility." *B.T.E. v. State,* 108 N.E.3d 322, 326 (Ind. 2018) (citing *K.S. v. State,* 849 N.E.2d 538, 543 (Ind. 2006)). "We consider only the evidence favorable to the

judgment and the reasonable inferences supporting it." *Id.* "We will not disturb the adjudication if there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt." *E.H. v. State,* 764 N.E.2d 681, 683 (Ind. Ct. App. 2002), *trans. denied* (citations omitted).

[11] Indiana's intimidation statute includes, in relevant part:

> (a) A person who communicates a threat with the intent:
>
>> (1) that another person engage in conduct against the other person's will; [("Subsection 1")]
>>
>> (2) that another person be placed in fear of retaliation for a prior lawful act; [("Subsection 2")]
>>
>> (3) of:
>>
>>> (A) causing:
>>>
>>>> (i) a dwelling, a building, or other structure; or
>>>>
>>>> (ii) a vehicle;
>>>
>>> to be evacuated; or
>>>
>>> (B) interfering with the occupancy of:
>>>
>>>> (i) a dwelling, building, or other structure; or

> > (ii) a vehicle; or [("Subsection 3")]
>
> > (4) that another person be placed in fear that the threat will be carried out, if the threat is a threat described in:
>
> > > (A) subsection (d)(1) through (d)(5); or
>
> > > (B) subsection (d)(7) through (d)(8); [("Subsection 4")]
>
> > commits intimidation, a Class A misdemeanor.

Ind. Code § 35-45-2-1(a).

[12] B.B. was alleged to be a delinquent child pursuant to Subsection 3, and specifically, that B.B. interfered with the occupancy of the high school. *See* Ind. Code § 35-45-2-1(a)(3)(B)(i). B.B.'s case was elevated to a Level 6 felony because B.B.'s threat was "to commit a forcible felony." Ind. Code § 35-45-2-1(b)(1)(A).

[13] The statute defines "threat" as follows:

> "Threat" means an expression, by words or action, of an intention to:
>
> > (1) unlawfully injure the person threatened or another person, or damage property;
>
> > (2) unlawfully subject a person to physical confinement or restraint;

(3) commit a crime;

(4) unlawfully withhold official action, or cause such withholding;

(5) unlawfully withhold testimony or information with respect to another person's legal claim or defense, except for a reasonable claim or witness fees or expenses;

(6) expose the person threatened to hatred, contempt, disgrace, or ridicule;

(7) falsely harm the credit or business reputation of the person threatened; or

(8) cause the evacuation of a dwelling, a building, another structure, or a vehicle.

Ind. Code § 35-45-2-1(d).

[14] "Whether a statement is a threat is an objective question for the trier of fact." *Newell v. State,* 7 N.E.3d 367, 369 (Ind. Ct. App. 2014), *trans. denied.* "A defendant's intent may be proven by circumstantial evidence alone, and knowledge and intent may be inferred from the facts and circumstances of each case." *Chastain v. State*, 58 N.E.3d 235, 240 (Ind. Ct. App. 2016), *trans. denied* (citations omitted).

[15] B.B.'s specific argument is that the evidence was insufficient because the State failed to prove beyond a reasonable doubt that B.B. knew or reasonably should

have known his plans to shoot students at the high school would be communicated to the potential victims. B.B.'s argument is essentially that B.B. did not intend his message to be repeated to anyone except R.A., and because there is no evidence or indication that B.B. sought to shoot R.A., B.B. did not threaten *victims* as B.B. claims the statute requires. *See* Appellant's Br. p. 15.

[16] In support of his argument, B.B. cites *J.T. v. State,* 718 N.E.2d 1119 (Ind. Ct. App. 1999). In *J.T.,* a fifteen-year-old high school student typed a document, which included statements that "someone shall choose to die" on a particular day and identified a specific student at J.T.'s high school in the threat. *J.T.,* 718 N.E.2d at 1121. J.T. printed the document on a printer at the school library, and J.T. intended a second student, who was not the student targeted in the document, to pick up the document and deliver it to J.T.; instead, the document was intercepted by the school librarian. The librarian turned the document in to the assistant principal, who notified law enforcement. After an investigation, J.T. was accused of being a delinquent, and the charging information alleged that J.T. "did communicate a threat to commit a forcible felony to [the student], with the intent that [the student] be placed in fear of retaliation for a prior lawful act. . . ." *Id.* at 1122. Accordingly, J.T. was alleged to be a delinquent child under Subsection 2.

[17] In vacating J.T.'s adjudication, our Court found that J.T. did not know or have good reason to know the document would reach the specific student identified in the document. In doing so, our Court distinguished J.T.'s case from *Ajabu v. State,* 677 N.E.2d 1035 (Ind. Ct. App. 1997), *trans. denied,* as follows:

In *[Ajabu],* this court construed the phrase "communicates a threat to another person" in the intimidation statute. There, the defendant had made threats through the print, radio and television media. The defendant sought reversal of his convictions for intimidation and argued that the person alleged to be threatened must be present for the threat to be communicated under the statute. We recognized that the definition of "communicate" requires that a person make a thing known or transmit information to another, and that the text of the intimidation statute does not limit the phrase "communicates a threat to another person" to only those threats made directly to or in the presence of the threatened party. Thus, we decided that communication can be indirect, and we affirmed the conviction because the defendant had used means of communication that he "knew or had good reason to believe would reach" the victims.

*J.T.,* 718 N.E.2d at 1123 (citations omitted).

[18] The State argues *J.T.* is distinguishable because J.T. was alleged to be a delinquent child for committing an act that would be considered intimidation if committed by an adult under Subsection 2; the threat in B.B.'s case, however, was charged under Subsection 3. We agree with the State on this point. Reading the plain language of the statute, it is clear that the legislature intended that threats under Subsections 1 and 2 must be communicated[4] to a specific victim, while Subsection 3 does not require the communication of the threat to a specific victim. *See* Ind. Code § 35-45-2-1(a)(1) (Subsection 1) (requiring that a person communicate a threat with the intent "that the other person engage in

---

[4] As our cases have held, communication of a threat may be made directly to the victim, or indirectly, such as through a news reporter. *See Ajabu,* 677 N.E.2d at 1043.

conduct against the other person's will"); *see also* Ind. Code § 35-45-2-1(a)(2) (Subsection 2) (requiring that a person communicate a threat with the intent "that another person be placed in fear of retaliation for a prior lawful act").

[19] B.B.'s case is more similar to some of the facts in *E.B. v. State,* 89 N.E.3d 1087 (Ind. Ct. App. 2017). E.B., a high school student, who was displeased with recent discipline he received at school, sent a text message to another student warning the second student to wear red the following Tuesday because E.B. "intended to shoot anybody who wasn't wearing red." *E.B.,* 89 N.E.3d at 1089 (internal quotations omitted). E.B. also communicated to a third student a similar warning and told the third student to "tell the ones that he cares about." *Id.* (citations omitted). E.B.'s sister overheard E.B. speaking on the phone regarding E.B.'s plan to shoot the assistant principal based on E.B.'s displeasure with his recent discipline. Students shared this information with the school administrators, and law enforcement was notified.

[20] After an investigation, the State alleged that E.B. was a delinquent child for committing two separate intimidation offenses: Count I related to E.B.'s specific threat against the assistant principal, pursuant to Subsection 1; and Count II related to E.B.'s communication for "interfering with the occupancy of the school" by sending a text message to a student that he would shoot anyone not wearing red, pursuant to Subsection 3. *Id.* at 1090. Our Court found that, as to the threats against the assistant principal, no evidence existed of the communicated threat to the assistant principal and, thus, the State could not prove intimidation under Subsection 1 because E.B. did not place the

assistant principal "in fear of retaliation for a prior lawful act." *Id.* at 1091. On the other hand, as to the second count under Subsection 3, our Court found ample evidence that E.B. intended to interfere with the occupancy of the school when E.B. told students to wear red and told others to share these instructions. Our Court found that "it should have been foreseeable to E.B. that news of E.B.'s plan would spread throughout the school. Word did spread, and after the school informed parents about the incident, absenteeism more than doubled the following day." *Id.* at 1093.

[21] As in *E.B.,* B.B.'s communication to R.A. evidenced B.B.'s threat to interfere with the occupancy of the school pursuant to Subsection 3.[5] B.B. argues that R.A. was not an intended victim, and accordingly, no threat was communicated. At a minimum, B.B.'s intent was that R.A. would not attend school to avoid the shooting, and thus, B.B. intended to interfere with the occupancy of the school. R.A. ultimately shared B.B.'s threats, which resulted in significant absences from school.

[22] Regardless, the State argues, and we agree, that B.B. should have known or had good reason to know that his threats to shoot the students at the high school would be communicated to others and the high school administration. B.B. was not discreet in his plans to kill persons at the high school, evidenced by: B.B.'s repeated statements to R.A., B.B.'s snapchats to R.A. regarding the

---

[5] B.B. does not challenge any other element of the offense.

same, and B.B. showing the manifesto to R.A. Unless R.A. was a co-conspirator in the attack, and no such argument has been made, a reasonable fact finder could conclude that B.B. knew or should have known that R.A. would report a plan of mass murder to other students at the high school. R.A. behaved in a predictable way when he exposed B.B.'s plans.

[23] The State presented sufficient evidence from which a trier of fact could conclude B.B. committed intimidation to interfere with the occupancy of the high school.

## Conclusion

[24] The evidence was sufficient to adjudicate B.B. a delinquent child for an act that would be considered intimidation if committed by an adult, a Level 6 felony. We affirm.

[25] Affirmed.

Najam, J., and Vaidik, J., concur.