

IN THE

# Court of Appeals of Indiana



FILED

Sep 10 2025, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Zachary A. Lester,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 10, 2025

Court of Appeals Case No.
25A-CR-44

Appeal from the Blackford Superior Court

The Honorable John Nicholas Barry, Judge

Trial Court Cause No.
05D01-2409-F6-293

**Opinion by Chief Judge Altice**
Judges Pyle and DeBoer concur.

**Altice, Chief Judge.**

## Case Summary

[1] Following a bench trial, Zachary A. Lester was convicted of Level 6 felony intimidation based on a Snapchat[1] message that he sent to a private group. He appeals and contends that the evidence was insufficient to convict him.

[2] We reverse.

## Facts & Procedural History

[3] In the early morning hours of September 13, 2024, Lester sent a Snapchat direct message (the message) to a group of about twenty individuals with whom he exchanged "dark humor" messages. *Transcript* at 28, 31. The message is what appears to be a selfie of Lester from the chest up with a bathroom shower behind him. Across the image is the following typed caption: "Now that I've

---

[1] As recently described by our colleagues, "Snapchat is an internet-based instant message and social networking application commonly downloaded onto cellular phones." *VanAuken v. State*, 233 N.E.3d 1042, 1045 n.2 (Ind. Ct. App. 2024), *trans. denied*. Snapchat's default setting is to delete messages between its users once they have been viewed by all recipients. Snapchat, http://help.snapchat.com (last visited Aug. 26, 2025).

showered and washed my sins away I can go and shoot up a preschool". *Exhibit Vol.* at 3. Shortly thereafter, Snapchat flagged the message and notified the Federal Bureau of Investigation's (FBI) National Threat Operations Center (NTOC),[2] who notified an FBI field office. FBI Agent Anthony Valenza contacted local law enforcement in Montpelier, where Lester lived. Agent Valenza spoke to Montpelier Police Department Chief Chris Snyder, who was familiar with Lester from prior contact.

[4]     There was no preschool in Montpelier, which is in Blackford County, and the nearest one was about four miles away in Bluffton, in Wells County, on the campus of Southern Wells Community Schools (Southern Wells). While attempting to make contact with Lester at his residence, Chief Snyder learned that Lester might be working in Bluffton. Agent Valenza then contacted Bluffton law enforcement to advise them of the message. The information was conveyed to Wells County Sheriff's Department Deputy Chad Bradley, who was a school resource officer for Southern Wells, and the decision was made to place Southern Wells on heightened security status, with extra officers placed on the schools' campus to monitor visitors and keep a lookout for Lester. Later in the day, Chief Snyder learned that Lester was working in Hartford City, in Blackford County, where Lester was picked up by law enforcement.

---

[2] Snapchat also notified Lester that his account had been reported for violating its guidelines.

In interviews with police that same day, Lester admitted to sending the message and said it was a joke. Lester told the officers that "he and his group of friends [] on Snapchat make these dark humor jokes and they step it up levels to see who can make the more – in his words 'messed up joke.'" *Transcript* at 31. He explained, "[W]e just try to always move the bar up and go as dark as we can." *Id.* at 21. Chief Snyder responded to Lester that there was "no humor" about shooting up a preschool, and Lester agreed that "it was dumb to do" and that he should not have sent the message. *Id.* In emails that Lester sent to the FBI later on September 13, which were obtained through a forensic search of his phone and admitted at trial, he stated, "I'm very sorry for what I said" and "it was not funny and not okay I truly am sorry I hope you see this thank you". *Exhibit Vol.* at 35, 36.

On September 16, 2024, the State charged Lester with Level 6 felony intimidation, alleging that he "communicate[d] a threat with the intent that another person be placed in fear that the threat to unlawfully injure another person will be carried out, and the threat was to commit a forcible felony." *Appendix* at 9.

A bench trial was held in November 2024. The State presented testimony from various law enforcement officers involved in the matter. In his testimony, Agent Valenza opined that it was "common knowledge" that anything posted on the internet is "public" and being monitored. *Transcript* at 11-12. He later acknowledged on cross-examination that it would be reasonable for a person

who sends a text message or private message to expect that message to be private to the recipient.

[8] The trial court found Lester guilty and sentenced him to 545 days executed at the Indiana Department of Correction. Lester now appeals. Additional facts will be supplied as necessary.

## Discussion & Decision

[9] Our standard of review for sufficiency of the evidence claims is well settled. The reviewing court considers only the probative evidence and reasonable inferences supporting the conviction. *Peterson v. State*, 187 N.E.3d 305, 308 (Ind. Ct. App. 2022). We do not reweigh the evidence or assess the credibility of the witnesses. *Matter of K.Y.*, 175 N.E.3d 820, 825 (Ind. Ct. App. 2021), *trans. denied.* We consider only the evidence most favorable to the trial court's ruling and the reasonable inferences that can be drawn from that evidence *Id.* A conviction will be affirmed if there is substantial evidence of probative value to support each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Rhodes v. State*, 144 N.E.3d 787, 790 (Ind. Ct. App. 2020).

[10] To prove Lester committed Level 6 felony intimidation as charged, the State was required to prove that he "communicate[d] a threat with the intent that another person be placed in fear that the threat . . . will be carried out, and the threat was to commit a forcible felony." *Appendix* at 9; Ind. Code § 35-45-2-1(a)(4), (b)(1)(A). As is relevant here, the statute defines "threat" as an

expression by words or action of an intention to unlawfully injure the person threatened or another person. I.C. § 35-45-2-1(c)(1). Whether a statement is a threat is an objective question for the trier of fact. *B.B. v. State*, 141 N.E.3d 856, 861 (Ind. Ct. App. 2020).

[11] Our Supreme Court has held that a "true threat" requires two necessary elements: "that the speaker **intend his communications to put his targets in fear for their safety,** and that the communications were likely to actually cause such fear in a reasonable person similarly situated to the target." *Brewington v. State*, 7 N.E.3d 946, 964 (Ind. 2014), *cert. denied* (2015) (emphasis added). "The intent that matters is not whether the speaker really means to carry out the threat, but only whether he intends it to place the victim in fear of bodily harm or death." *Id*. at 963. Absent a defendant's admission, intent is determined from consideration of the defendant's conduct and the natural and usual consequences of that conduct. *K.Y.*, 175 N.E.3d at 825.

[12] A defendant need not speak directly with a victim to communicate a threat for purposes of I.C. § 35-45-2-1. *E.B. v. State*, 89 N.E.3d 1087, 1091 (Ind. Ct. App. 2017). However, our courts have recognized that, to communicate a threat for purposes of the offense of intimidation, the statement must be transmitted in such a way that the defendant knows or has good reason to believe the statement will reach the victim. *See Ajabu v. State*, 677 N.E.2d 1035, 1043 (Ind. Ct. App. 1997) (affirming conviction for intimidation where defendant used a means of communication, namely media outlets, that he "knew or had good reason to believe would reach" the victims), *trans. denied*.

[13]     Here, no evidence was presented that Lester "intend[ed] his communication to put his target in fear for his safety" as required for a true threat. Assuming for the sake of argument the message included a threat and the target was the preschool on the Southern Wells campus, the evidence does not reflect that Lester knew or had good reason to believe that it would reach the targeted victims. Lester sent the message to a private Snapchat group of about twenty individuals who exchanged what he described as dark humor. There was no evidence that anyone in that Snapchat group had a connection to any preschool. While the officers testified to considering the message as a credible threat to be investigated and Agent Valenza testified that in his opinion a reasonable person would be placed in fear by it, there was no testimony from or about any person associated with the nearby preschool – or for that matter any preschool – who was in fact placed in fear by the message.

[14]     We distinguish the present facts from those in *Matter of K.Y.*, where K.Y. sent a Snapchat post from the phone of another juvenile, A.I., without her knowledge. The message depicted a meme of a cartoon gaming character brandishing firearms with a caption stating "consider this a f*ucking warning all of you don't come to school on Monday." 175 N.E.3d at 823. The Snapchat message was sent to a group of A.I.'s friends at Clark County Middle School and, in the words of the testifying officer, was then "distributed blindly." *Id*. Like Lester, K.Y. told officers she meant the message as a joke. The juvenile court entered an adjudication for misdemeanor intimidation.

On appeal, K.Y. asserted that she did not have the requisite intent because she considered her Snapchat post to be a joke and not a threat. In affirming the intimidation adjudication, the KY court observed that "[b]y posting her message in the Snapchat group, K.Y. published a clear threat with respect to school attendance **on a platform she admitted would be received by Clark County Middle School students**." *Id*. at 825 (emphasis added). In contrast here, there was no evidence that Lester sent the message knowing or expecting that it would be viewed by anyone that had anything to do with "a preschool" as mentioned in the message.

We find the present circumstances more akin to those in *J.T. v. State*, 718 N.E.2d 1119 (Ind. Ct. App. 1999), where J.T. and a friend created and printed a document in their high school's library that described violent acts to be inflicted upon another student at the school. The friend went to retrieve the document and take it to J.T. but the librarian had intercepted the document at the printer and turned it over to administrators, who notified law enforcement. Administrators also showed the document to the student named in the document. On appeal, this court reversed J.T.'s intimidation adjudication, finding that, even if the document contained a threat, the communication element of the statute was not satisfied as there was no evidence that J.T. knew or had reason to believe that the document would be intercepted and, through channels, reach the targeted student named therein. *Id*. at 1123-24.

In *E.B.*, we also reversed an intimidation adjudication due to lack of evidence that a juvenile's statement about shooting someone was communicated in a

way likely to reach the intended victim. There, E.B. was disciplined by the high school's assistant principal in the cafeteria for misconduct. Some weeks later, E.B.'s sister overheard E.B. talking on the phone to someone and saying he was going to bring a gun to school and shoot the assistant principal because he "didn't like him." 89 N.E.3d at 1089. E.B.'s sister told the assistant principal about the statement, but E.B. did not. On appeal, we determined that there was "no evidence that E.B. made his statement with knowledge or reason to believe that his statement would reach [the assistant principal]." *Id*. at 1092.

[18] As in *J.T.* and *E.B.*, we find that there was a lack of evidence that Lester communicated the message in a way that indicated an intent to reach the target, if there was one. We are unpersuaded by the State's suggestion that Lester "made the post online in a public forum" and therefore knew or had good reason to know that his message "could reach" preschool children or adults responsible for their care. *Appellee's Brief* at 6. Even if anything posted on the internet is being monitored and "open to the public," as Agent Valenza opined, Lester did not post the message to a public forum and, rather, sent it directly to a private Snapchat group. *Transcript* at 12.

[19] While Lester's Snapchat message was inappropriate and disturbing, we cannot say on the record before us that the State presented sufficient evidence to support a conviction for Level 6 felony intimidation.

[20] Judgment reversed.

Pyle, J. and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

John Patrick Wright
Brandon E. Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Alexandria Sons
Deputy Attorney General
Indianapolis, Indiana